DECISION IN MANDAMUS ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Jack Albano, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio ("commission"), to vacate its order reinstating compensation for temporary total disability ("TTD") as of November 8, 2002, and to issue an order reinstating the compensation as of October 5, 1999.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided the requested writ of mandamus should be denied. Relator filed objections to the magistrate's decision.
 {¶ 3} In his objections, relator first argues the magistrate failed to address the commission's failure to consider all relevant evidence. Specifically, relator contends the commission abused its discretion in stating in its order "[f]urthermore, Dr. Frost's office records do not indicate that he treated the injured worker between the visits of 02/05/1999 and 06/20/2001," because the record in fact includes evidence of treatment during that period. Relator claims the commission failed to consider such evidence.
 {¶ 4} As evidence of such treatment, relator points to two handwritten office notes dated February 2, 2000 and November 1, 2000. However, these notes do not state an opinion that would support TTD benefits. Neither of the notes describes any treatment for the allowed conditions.
 {¶ 5} The note, dated February 2, 2000, discusses relator's back condition, his diabetes, his exercise with modifications, his medications and other various conditions. The note does not recommend any treatment and does not discuss relator's knee condition. It merely shows that relator visited Dr. Frost.
 {¶ 6} As for the note dated November 1, 2000, it makes no reference to examination findings and no treatment is indicated other than mentioning the fact that Dr. Krebs had previously told relator he will eventually need a left knee replacement. It notes that relator is trying to postpone surgery as long as possible. As the magistrate found, the mere fact that an eventual knee replacement may be warranted does not require an award of TTD. The note merely shows that relator visited Dr. Frost. It does not show that Dr. Frost treated relator.
 {¶ 7} Accordingly, the existence of the February 2, 2000 and November 1, 2000 handwritten notes do not contradict the commission's statement and do not establish relator's entitlement to a writ of mandamus. The commission was reasonable in stating that Dr. Frost's records do not show that he "treated" claimant for the condition between February 5, 1999 and June 20, 2001. We therefore clarify the magistrate's conclusion of law in that we explicitly conclude that relator has not met his burden of proving that the commission made an erroneous statement regarding evidence. Ultimately, this clarification does not alter the fact that relator is not entitled to the relief requested. Accordingly, relator's first objection is overruled.
 {¶ 8} In his second objection, relator asserts the magistrate failed to apply the Eberhardt "reasonable basis standard" to the commission's basis for rejecting uncontroverted medical evidence. State ex rel. Eberhardt v. Flxible Corp. (1994),70 Ohio St.3d 649, 655. Relator argues if the commission found the reports of Dr. Matejczyk persuasive, it was required to find the reports of Dr. Frost and Dr. Krebs persuasive because there is no difference in evidentiary quality. The magistrate concluded the commission set forth a reasonable explanation for finding that Dr. Matejcyk's opinions supported TTD while other opinions did not. We agree.
 {¶ 9} As the magistrate found, "the commission emphasized that, when Dr. Matejczyk first certified TTD, she had actually scheduled the surgery and had previously not ruled out an imminent knee replacement in her November 2001 report. In contrast, the other doctors merely mentioned that surgery would be appropriate in the indefinite future and did not describe any significant changes in function or treatment." (Magistrate's Decision at 7.) Accordingly, the commission stated a reasonable explanation for finding that Dr. Matejczyk's opinions supported TTD and the others did not.
 {¶ 10} Following an independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them with the exception noted in this opinion. Accordingly, we adopt the magistrate's findings of fact, and we adopt the magistrate's conclusions of law with clarification. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objections overruled;
writ denied.
PETREE and BROWN, JJ., concur.
 IN MANDAMUS {¶ 11} In this original action in mandamus, relator, Jack Albano, asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order reinstating compensation for temporary total disability ("TTD") as of November 8, 2002, and to issue an order reinstating the compensation as of October 5, 1999.
 Findings of Fact {¶ 12} 1. In 1972, Jack Albano ("claimant") underwent an open meniscectomy of the left knee with ligament reconstruction and augmentation device, followed by development of osteoarthritic degeneration of the left knee.
 {¶ 13} 2. In 1986, claimant sustained an industrial injury, and his workers' compensation claim was allowed for back conditions including a herniated lumbar disc.
 {¶ 14} 3. In 1989, claimant had surgery for the herniated disc, and he had further surgery in 1997. TTD compensation ceased on March 19, 1998.
 {¶ 15} 4. In February 1999, claimant was seen for a routine checkup by his treating physician, Frederick Frost, M.D., who commented as follows: "Symptoms are unchanged in character, duration or severity." Claimant reported that he was able to walk at a pace of 2.6 miles per hour on his treadmill and spent time outdoors hunting or at his computer trading stocks. Arthritic degeneration continued.
 {¶ 16} 5. In February 2000, claimant visited the Cleveland Clinic. Handwritten notes state that there were "no new issues" and that claimant walked at a pace of 2.7 miles per hour for 1.25
miles on a treadmill.
 {¶ 17} 6. On October 31, 2000, claimant consulted Viktor Krebs, M.D., who stated that the left knee had advanced degeneration due to knee instability from a non-functioning "ligament reconstruction 27 years ago." At that time, the industrial claim was allowed only for back conditions, but claimant expressed concern that the weakness of his right leg from the back injury was causing him to place stress on his bad left knee. Dr. Krebs did not comment on that matter but stated that, if claimant could strengthen the left knee, it would be more functional and pain would decrease. Dr. Krebs further observed that a knee replacement would eventually be advisable "at some point in the future." At present, Dr. Krebs stated that he would recommend anti-inflammatory medication, physical therapy to strengthen the muscles, and an elastic sleeve. Clinic notes on the following day include the statement that claimant hoped to postpone knee surgery as long as possible.
 {¶ 18} 7. On June 21, 2001, claimant saw Dr. Frost, who recommended allowance of a knee condition in the workers' compensation claim.
 {¶ 19} 8. On September 12, 2001, a district hearing officer allowed the claim for "aggravation of pre-existing arthritis of the left knee."
 {¶ 20} 9. On September 20, 2001, Dr. Frost completed a C-84 certification of TTD caused by aggravation of preexisting arthritis of the left knee. The objective finding was "xray: DJD of knee." Dr. Frost stated that claimant's last examination took place in the summer of 2001 and that the next appointment was in six months.
 {¶ 21} 10. In October 2001, claimant filed a motion requesting that TTD compensation be reinstated beginning October 5, 1999.
 {¶ 22} 11. On November 8, 2001, claimant consulted a surgeon, Mary-Blair Matejczyk, M.D., regarding a knee replacement. Dr. Matejczyk found that the left knee had full extension but limited flexion. There was crepitus and laxity, but the thigh muscles were strong. The X-rays were not appreciably changed from prior films. Dr. Matejczyk was reluctant to perform surgery due to claimant's diabetes, which was not well controlled at that time. Although Dr. Matejczyk did not rule out surgery within a few months, she took a conservative approach, suggesting that claimant's condition be monitored for a period.
 {¶ 23} 12. On November 20, 2001, a hearing was held before a district hearing officer, who denied the motion to reinstate TTD:
 {¶ 24} "District Hearing Officer denies temporary total disability compensation from 10/05/1999 to date as not substantiated by the medical evidence on file. District Hearing Officer finds the C-84 report of Dr. Frost is not credible medical evidence given the office records from Dr. Frost which fail to document any treatment plan with respect to claimant's left knee or any disability related therefrom. District Hearing Officer has considered all evidence on file and further finds the C-84 as completed by Dr. Frost is not sufficient. The C-84 in question is dated 09/20/2001 and indicates last exam sometime during summer of 2001, indicates next visit is in six months and documents no current treatment. District Hearing Officer does not find this evidence persuasive to substantiate the requested disability."
 {¶ 25} 13. On January 2, 2002, Dr. Frost wrote a letter stating that, as of February 5, 1999, claimant was disabled from performing his former employment due to the aggravation of his preexisting left knee arthritis.
 {¶ 26} 14. In January 2002, a staff hearing officer affirmed the denial of TTD, concluding that "the medical evidence is insufficient to establish that the disability is caused by the allowed conditions in this claim" and noting the lack of "contemporaneous medical evidence of disability." Claimant appealed.
 {¶ 27} 15. Dr. Matejczyk scheduled the surgery to take place on April 3, 2002.
 {¶ 28} 16. On April 1, 2002, Dr. Matejczyk certified TTD based on the impending surgery to treat claimant's aggravation of preexisting arthritis of the left knee. She opined that claimant had been disabled by this condition since November 8, 2001.
 {¶ 29} 17. The surgery proceeded as scheduled, and, on July 26, 2002, Dr. Matejczyk completed another C-84 certification.
 {¶ 30} 18. In September 2002, the commission granted TTD compensation beginning November 8, 2001, but denied TTD prior to that date. The order states in part:
 {¶ 31} "* * * [T]he injured worker has sustained his burden of proving that he again became temporarily and totally disabled on 11/08/2001 as a direct result of an allowed condition in this claim.
 {¶ 32} "* * * On 09/12/2001, a District Hearing Officer amended this claim to include the condition of `aggravation of preexisting arthritis of the left knee.' The Industrial Commission finds that it is this new condition, which has rendered the injured worker totally disabled since 11/08/2001.
 {¶ 33} "In a report dated 11/08/2001, Dr. Mary-Blair Matejczyk * * * could not rule out the need for an immediate total knee arthroplasty. Despite this fact, Dr. Matejczyk recommended conservative management on that date in an attempt to avoid the painful surgery. Subsequently, * * * Dr. Matejczyk performed a left total knee arthroplasty * * *.
 {¶ 34} "In a C-84 report dated 04/01/2002, Dr. Matejczyk opined that the injured worker has been temporarily and totally disabled since 11/08/2001 due to the allowed aggravation of his preexisting left knee arthritis and noted the injured worker's impending surgery on 04/03/2002 as the objective finding supporting her opinion. The Industrial Commission notes that there is no evidence on file that controverts Dr. Matejczk's opinion. As such, it is the conclusion of the Industrial Commission that the preponderance of the evidence on file establishes that the injured worker is entitled to receive temporary total disability compensation beginning on 11/08/2001.
 {¶ 35} "It is the further finding of the Industrial Commission that the injured worker has not sustained his burden of proving that he was temporarily and totally disabled from 10/05/1999 through 11/07/2001 secondary to any of the allowances in this claim.
 {¶ 36} "In support of his request for compensation, the injured worker has submitted Dr. Frost's office records, C-84 report dated 09/20/2001, and letter dated 01/02/2002, as well as Dr. Krebs' office note dated 10/31/2000. The Industrial Commission finds, however, that these documents are not `some evidence' supporting the payment of temporary total compensation beginning on 10/05/1999.
 {¶ 37} "Dr. Frost's office records document left knee pain and symptoms beginning on 02/05/1999, but do not specifically state that the injured worker is unable to work as a result of the left knee symptomatology. Similarly, Dr. Krebs' 10/31/2000 office record documents positive left knee findings, but does not provide any opinion about the effect of these left knee findings on the injured worker's ability to work. Regarding Dr. Frost's C-84 report, dated 09/20/2001, and his letter dated, 01/02/2002, the Industrial Commission does not find this evidence to be persuasive since Dr. Frost's contemporaneous records are devoid of any indication that the injured worker's left knee condition prevented him from working. Furthermore, Dr. Frost's office records do not indicate that he treated the injured worker between the visits of 02/05/1999 and 06/20/2001.
 {¶ 38} "For these reasons, the Industrial Commission finds that the injured worker is ineligible to receive temporary total disability compensation beginning on 10/05/1999.
 {¶ 39} "Accordingly, it is the order of the Industrial Commission that temporary total disability compensation is denied from 10/05/1999 through 11/07/2001 and is granted from 11/08/2001 to 09/28/2002 and to continue upon submission of medical evidence that causally relates any further disability to the allowances in this claim."
 Conclusions of Law {¶ 40} The issue before the court is whether the commission abused its discretion in reinstating TTD compensation on November 8, 2001, rather than on an earlier date. For the reasons set forth below, the magistrate finds no abuse of discretion.
 {¶ 41} Several fundamental principles apply to the court's review. First, pursuant to R.C. 4123.52, TTD compensation may be reinstated when there are new and changed circumstances. For example, if the claimant experiences a flare-up of his allowed condition that temporarily and totally disables him, he is eligible for reinstatement. State ex rel. Bing v. Indus. Comm.
(1991), 61 Ohio St.3d 424. Similarly, when TTD is terminated on the basis of a return to work, a subsequent inability to perform that job can warrant a reinstatement of TTD. State ex rel.Navistar Internatl. Transp. Corp. v. Indus. Comm. (1993),66 Ohio St.3d 267. In addition, a disabling treatment such as surgery may warrant reinstatement of TTD compensation, or, as here, the allowance of an additional condition may constitute the requisite change in circumstances. As always, the burden rests on the claimant to prove that the allowed conditions have directly caused the alleged period of TTD. E.g., State ex rel. ChryslerCorp. v. Indus. Comm. (1998), 81 Ohio St.3d 158.
 {¶ 42} Second, it is well established that issues of weight and credibility of evidence lie outside the scope of mandamus inquiry. State ex rel. Burley v. Coil Packing, Inc. (1987),31 Ohio St.3d 18. The commission, as the finder of fact, has exclusive authority to determine the persuasiveness of evidence.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165;State ex rel. Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575. In mandamus, the courts do not disturb a commission order supported by "some evidence," regardless of whether the record includes other evidence, greater in quantity and/or quality, that supports the contrary decision. State ex rel. Pass v. C.S.T.Extraction Co. (1996), 74 Ohio St.3d 373. Moreover, the court in mandamus presumes that the commission considered all the evidence properly unless the order includes language indicating that the commission failed to consider all the relevant evidence. Stateex rel. Lovell v. Indus. Comm. (1996), 74 Ohio St.3d 250.
 {¶ 43} The commission has no obligation to identify the medical opinions it has rejected nor any obligation to state its reasons for rejecting a medical opinion where it has cited some evidence to support its decision. Id.; Bell, supra. In some cases, however, the commission's decision is based on a rejection of claimant's evidence rather than affirmative reliance on contrary evidence; the commission may find that the proffered evidence is not sufficiently persuasive to meet the claimant's burden of proof or may find that the evidence has a defect and cannot constitute "some evidence" on which the commission may rely. In such cases, where the commission rejects uncontroverted evidence, it must set forth a reason. See, generally, State exrel. Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649, 655
(stating that there must be a reasonable basis for rejecting uncontroverted medical reports and that the basis should be in the record); State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203 (explaining that a brief explanation of the rationale is necessary to permit meaningful judicial review); see, also,State ex rel. Edgerton v. Vencor, Inc. (Apr. 30, 1999), Franklin App. No. 98AP-1366 (Magistrate's Decision), adopted June 29, 1999 (Memorandum Decision); State ex rel. Woolever v. TheFishel Co. (Nov. 30, 1998), Franklin App. No. 98AP-643 (Magistrate's Decision), adopted May 20, 1999 (Memorandum Decision); State ex rel. Cincinnati Gear Co. v. Indus. Comm.
(Oct. 28, 1998), Franklin App. No. 98AP-426 (Magistrate's Decision), adopted March 4, 1999 (Memorandum Decision).
 {¶ 44} In the present action, claimant argues that, if the commission found the reports of Dr. Matejczyk persuasive, it was required to find the other reports persuasive as well. Claimant contends that the commission had no discretion to evaluate the reports of Dr. Matejczyk differently from the reports of Drs. Frost and Krebs insofar as TTD was concerned. Specifically, claimant asserts "that there is no difference in evidentiary quality" of the evidence on which the commission relied and the evidence it rejected. Similarly, claimant insists that the "evidentiary quality" of Dr. Matejczyk's opinions was "substantially equivalent" to the opinions that the commission rejected.
 {¶ 45} The magistrate rejects these arguments. The credibility and weight of the evidence is for the commission to determine in its sole discretion. The commission set forth a reasonable explanation for finding that Dr. Matejczyk's opinions supported TTD while other opinions did not. For example, the mere fact that an eventual knee replacement may be warranted does not require an award of TTD. State ex rel. McKeever v. Indus. Comm.
(Jan. 30, 1996), Franklin App. No. 95AP-677 (Magistrate's Decision), adopted May 2, 1996 (Memorandum Decision). In its order, the commission emphasized that, when Dr. Matejczyk first certified TTD, she had actually scheduled the surgery and had previously not ruled out an imminent knee replacement in her November 2001 report. In contrast, the other doctors merely mentioned that surgery would be appropriate in the indefinite future and did not describe any significant changes in function or treatment.
 {¶ 46} Further, the commission noted that Dr. Frost's office records did not demonstrate that claimant visited him between February 1999 and June 2001, which indicates not only that Dr. Frost was not treating claimant with a view toward obtaining improvement, but, also, indicates that Dr. Frost's opinions regarding claimant's condition beginning in October 1999 were not supported by a clinical observation. The commission set forth other weaknesses in the reports insofar as supporting TTD was concerned.
 {¶ 47} The magistrate concludes that claimant has not met his burden of proof in mandamus. Claimant has not demonstrated that the commission had a legal duty to reinstate TTD earlier than November 8, 2001. Accordingly, the magistrate recommends that the court deny the requested writ of mandamus.